UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
CHRISTOPHER GORDON,

        Plaintiff,

-against-

THE CITY OF NEW YORK POLICE DEPARTMENT
84th PRECINCT;NEW YORK CITY POLICE OFFICER
CARLOS PERALTA, SHIELD NO. 30640; U.S.
DEPARTMENT OF HOMELAND SECURITY
IMMIGRATION AND CUSTOMS ENFORCEMENT;
AGENT BOYCE T.; AGENT SANTIAGO E.,

        Defendants.
------------------------------------------------------------------x

**NOT FOR PUBLICATION**
**MEMORANDUM & ORDER**
10-CV-3706 (CBA)(LB)

AMON, Chief United States District Judge.

    Plaintiff Christopher Gordon ("Gordon"), pro se, has filed suit pursuant to the Vienna Convention on Consular Relations ("VCCR"), the Alien Tort Statute ("ATS"), and 42 U.S.C. § 1983, alleging that the defendants deprived him of the right to consular access granted under Article 36(1)(b) of the VCCR. The defendants have moved to dismiss the complaint in full, arguing principally that the VCCR does not create a judicially enforceable individual right that may be vindicated in a damages action, that the NYPD is not a suable entity, and that the Court lacks subject matter jurisdiction over the claims against U.S. Immigration and Customs Enforcement. For the reasons stated below, the defendants' motions are granted, and the complaint is dismissed in full.

    **I.    BACKGROUND**

    The Court is able to discern the following allegations in the Amended Complaint and in Gordon's opposition to the defendants' motions. New York City Police Department ("NYPD")

1

Officer Peralta, from the 84th Precinct, arrested Gordon on November 2, 2007 for suspected check fraud. Following his arrest and processing, Gordon, a citizen of Trinidad and Tobago, claims that Officer Peralta did not inform him of his right to contact his consular office and denied Gordon the ability to contact his consular office after Gordon so requested. Gordon claims he was held at Central Booking until November 4, 2007, and that the case against him was dismissed at that time.

On September 23, 2008, Gordon was re-arrested on the same charges, and was arraigned on September 25, 2008. During Gordon's detainment on Rikers Island, he alleges that Agent Boyce of Immigration and Customs Enforcement ("ICE") interviewed him on September 27, 2008. Gordon claims that Agent Boyce also did not inform him of his right to consular access and denied Gordon the ability to contact his consular office after Gordon requested it.

Gordon was eventually convicted and transferred on November 26, 2009 to the Ulster Correctional Facility, where he was interviewed by ICE Agent Santiago. Gordon claims that Agent Santiago denied his request to contact the consul and stated that "it was too late for Plaintiff to do so." (Compl. at 4).

Gordon states that Immigration Judge Roger Sagerman issued a deportation order against him on February 16, 2011, which Gordon claims he is appealing. Gordon states that the lack of consular access prevented his ability to challenge the arrests, prosecution, and subsequent deportation. (Compl. at 7-9.) He seeks a total of $3 million as "as just compensation for the damages caused by the International violations of both State and Federal Law." (Compl. ¶ 38.)

Both the federal and city defendants have moved to dismiss in separate submissions. As the motions involve substantially overlapping arguments, they can largely be addressed together. The Court also notes that Gordon has filed a separate case under docket number 10-cv-5148-

CBA-LB against several defendants, including Officer Peralta and the City of New York, alleging false arrest, malicious prosecution and other deprivations of constitutional rights arising out of the same arrests and conviction detailed above.[1]  Gordon has had ample opportunity to air his arrest- and prosecution-related constitutional claims in the other action, and insofar as this complaint alludes to or attempts to duplicate those claims, they will not be addressed here.  The Court will therefore limit its construction of this complaint primarily to alleged violations of Article 36 of the VCCR.

## II. STANDARD OF REVIEW

To withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A complaint that contains only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555.  Neither will a complaint that contains only "naked assertion[s]" without "further factual enhancement."  Id. at 557.

Iqbal identifies a "two-pronged" approach to determining the sufficiency of a complaint.  129 S. Ct. at 1950.  First, courts can "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  Id.  Second, they can then identify whether the complaint, stripped of its conclusory pleadings, "plausibly give[s] rise to an entitlement to relief."  Id.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

---

[1] The Court has addressed in a separate opinion a motion to dismiss the complaint in that action.  See Gordon v. City of New York, 10-cv-5148 (docket entry #45).

misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. A court's consideration on a motion to dismiss is "limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991).

Finally, the Court is mindful that "[a] document filed pro se is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Boykin v. KeyCorp, 521 F.3d 202, 214 (2d Cir. 2008)(quoting Erickson v. Pardus, 551 US 89, 94 (2007)). Accordingly, the Court must construe pro se complaints "to raise the strongest arguments that they suggest." Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006)(quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). However, "[t]he duty to liberally construe a [pro se] plaintiff's complaint is not the equivalent of a duty to rewrite it." Kirk v. Heppt, 532 F.Supp.2d 586, 590 (S.D.N.Y.2008) (internal quotation marks and alterations omitted); see also Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) ("[T]hough we are obligated to draw the most favorable inferences that [a pro se] complaint supports, we cannot invent factual allegations that he has not pled.")

## III. DISCUSSION

### A. The VCCR and § 1983

Fundamental to this dispute, Gordon alleges that the defendants violated his rights under the Vienna Convention on Consular Relations by denying him access to the consular office of Trinidad and Tobago. He appears to bring the action directly under the treaty and through 42

4

U.S.C. § 1983. In a prior order, pursuant to 28 U.S.C. § 1915A(b), this Court dismissed Gordon's claims arising from the defendants' alleged failure to inform him of his right of consular access and notification. See Gordon v. City of New York Police Dept., 2010 WL 4738694 (E.D.N.Y. 2010); Mora v. New York, 524 F.3d 183, 188 (2d Cir. 2008) (holding that "Article 36's obligation to inform detained aliens of the prospect of consular notification and access cannot, when violated, be vindicated by a private action for damages in our courts."). The Court did not decide at that time, however, "whether plaintiff's allegations related to the <u>failure to notify consular officials of his detention upon request</u> state a claim upon which relief may be granted." Id. at *2 (emphasis added). Thus, the principal question presented on this motion is whether an individual right to bring a damages claim exists when a detained foreign national specifically requests notification of his or her consulate and that request is denied. For the reasons stated below, the Court believes that the guidance provided in Mora and in the holdings of other circuits leads to the conclusion that no enforceable individual right exists when a person requests consular notification and does not receive it.

The VCCR is intended to "contribute to the development of friendly relations among nations." Medellin v. Texas, 552 U.S. 491, 499 (2008) (quoting 21 U.S.T., 77, 79). Trinidad and Tobago and the United States are both signatories to the treaty. T.I.A.S. No. 6820, 21 U.S.T. 77, 1969 WL 97928 (U.S. Treaty). Article 36, the provision relied upon by Gordon, provides:

> 1. With a view to facilitating the exercise of consular functions relating to nationals of the sending State:
>
> (a) consular officers shall be free to communicate with nationals of the sending State and to have access to them. Nationals of the sending State shall have the same freedom with respect to communication with and access to consular officers of the sending State;
>
> (b) *if he so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its*

5

> *consular district, a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner.* Any communication addressed to the consular post by the person arrested, in prison, custody or detention shall also be forwarded by the said authorities without delay. *The said authorities shall inform the person concerned without delay of his rights under this sub-paragraph*
>
> (c) consular officers shall have the right to visit a national of the sending State who is in prison, custody or detention, to converse and correspond with him and to arrange for his legal representation. They shall also have the right to visit any national of the sending State who is in prison, custody or detention in their district in pursuance of a judgment. Nevertheless, consular officers shall refrain from taking action on behalf of a national who is in prison, custody or detention if he expressly opposes such action.
>
> 2. The rights referred to in paragraph 1 of this Article shall be exercised in conformity with the laws and regulations of the receiving State, subject to the proviso, however, that the said laws and regulations must enable full effect to be given to the purposes for which the rights accorded under this Article are intended.

21 U.S.T. at 101-102 (emphasis added). In both Medellin v. Texas, 552 U.S. 491, 506 n. 4 (2008) and Sanchez–Llamas v. Oregon, 548 U.S. 331, 343 (2006), the Supreme Court assumed without deciding that Article 36 creates judicially enforceable individual rights.

In Mora, the Second Circuit closely examined the question of individual rights under the VCCR, and thus whether a plaintiff could state a damages claim, either under the treaty itself or through § 1983, for an alleged VCCR violation. See Mora, 524 F.3d at 199 n.23; Gonzaga v. Doe, 536 U.S. 273, 283-85 (2002) (plaintiff must demonstrate that federal law in question confers individual right in order to bring suit pursuant to § 1983). There, an incarcerated citizen of the Dominican Republic asserted a claim based on the arresting officers' failure to notify him of his consular rights under Article 36. Mora, 524 F.3d at 191. Separating out the three sentences contained in Article 36(1)(b), the court held that no individual right to bring a damages action existed under Article 36(1)(b)(third), the third sentence, which provides that "authorities shall inform the person concerned without delay of his rights under this sub-paragraph." Id. at

6

209. Although panel declined to "consider whether a detaining authority's refusal to comply with the first set of requirements of Article 36(1)(b)—by refusing to notify the consulate at the request of the detained alien—would present . . . circumstances" in which "courts could entertain an individual right of action," id. at 187 n.4, the reasoning of that opinion supports the proposition that no such private right of action exists.

In support of its conclusion that "Article 36's obligation to inform detained aliens of the prospect of consular notification and access cannot, when violated, be vindicated by a private action for damages filed in our courts," the Mora court drew from several sources and principles that are highly relevant here.  Id. at 188.

First, in examining the VCCR itself, the Mora court discussed the "presumption that treaties do not create privately enforceable rights in the absence of express language to the contrary," and found that the text of the VCCR did not furnish a clear statement to overcome that presumption. Id. at 188; see also Medellin, 552 U.S. at 506 n.3 ("Even when treaties are self-executing . . . the background presumption is that [i]nternational agreements, even those directly benefiting private persons, generally do not create private rights or provide for a private cause of action in domestic courts." (internal quotation marks omitted)).  The court observed that "[n]othing in [the treaty's] text explicitly provides for judicial enforcement of [its] consular access provision at the behest of private litigants," and opined that "the lack of any mention in the text of Article 36(1)(b) as to whether or how detained foreign nationals might vindicate their asserted rights at least suggests that the drafters of the Convention did not intend to confer rights directly upon individuals." Id. at 194 (quoting United States v. Li, 206 F.3d 56, 66 (1st Cir. 2000) (en banc) (Selya & Boudin, JJ., concurring)); see also Sanchez-Llamas, 548 U.S. at 347 ("[W]here a treaty does not provide a particular remedy, either expressly or implicitly, it is not

for the federal courts to impose one on the States through lawmaking of their own."). The court also noted that "there are a number of ways in which the drafters of the Vienna Convention, had they intended to provide for an individual right, . . . could have signaled their intentions to do so." Mora, 524 F.3d at 203 (collecting treaty sources providing for individually enforceable rights).

Acknowledging that Article 36 refers to the "rights" of a detained person, the court nonetheless reasoned that "the Supreme Court has on several occasions rejected the argument that references to the 'rights' of persons potentially benefited by legislation . . . necessarily support the view that the legislation creates rights in individuals that can be enforced by those individuals through mechanisms such as a § 1983 action or an implied private right of action." Id. at 195 (citing Gonzaga Univ. v. Doe, 536 U.S. 273, 289 n.7 (2002); Pennhurst State Sch. & Hosp. v. Halderman, 451 U.S. 1, 18-20 (1981)).

Considering the broader text and context of the treaty, the court also noted a portion of the preamble stating that "the purpose of [these consular] privileges and immunities is not to benefit individuals but to ensure the efficient performance of functions by consular posts on behalf of their respective States." 21 U.S.T. at 79. The court found that this statement and other preamble passages "suggest that the rights created by the Convention . . . belong to, and should generally be enforced by, the States-parties to the Convention and their official representatives." Mora, 524 F.3d at 197. Corroborating this inference was the fact that judicial enforcement of an individual right to consular notification and/or access had not been recognized by the other signing states. Id. at 189 n.5. ("'With one possible exception,' the State Department was unable to identify any country in which an individual litigant could sue for money damages for violation of the consular notification and access provisions in Article 36."). Further, the court noted that

8

the Optional Protocol Concerning the Compulsory Settlement of Disputes, "[a]lthough expressly designed to implement the terms of the Convention, . . . makes no mention of private actions by detained individuals," but instead provides that disputes arising out of the Convention may be brought before the ICJ by a State-party.  Id. at 197 (citing 21 U.S.T. at 326).  The panel also explained various mechanisms, other than individual actions for damages, through which compliance with the treaty's provisions can be achieved.  Id. at 197-99.

Finally, the panel placed "great weight" on the interpretation offered by the Executive branch of the United States, "that the Vienna convention 'do[es] not create domestically enforceable federal law.'"  Id. at 204 (quoting Medellin, 552 U.S.at 513); see also Sumitomo Shoji America, Inc. v. Avagliano, 457 U.S. 176, 184-85 (1982) ("Although not conclusive, the meaning attributed to treaty provisions by the Government agencies charged with their negotiation and enforcement is entitled to great weight.").  Indeed, as other courts have noted, "the [State] Department has repeatedly asserted that 'the only remedies for failures of consular notification under the Vienna Convention are diplomatic, political, or exist between states under international law,' and that '[t]he right of an individual to communicate with his consular official is derivative of the sending state's right to extend consular protection to its nationals.'"  Cornejo v. County of San Diego, 504 F.3d 853, 862 (9th Cir. 2007) (quoting United States v. Emuegbunam, 269 F.3d 377, 392 (6th Cir. 2001); United States v. Li, 206 F.3d 56, 63 (1st Cir. 2000)).

In sum, while limiting its actual holding to the third clause of Article 36(1)(b), the Second Circuit relied on VCCR language, context, and practice which also support the conclusion that there is no individual right to bring a damages action for an alleged violation of the first clause.

9

This modest extension of Mora is supported by the holdings of other circuits. Notably, the 11th Circuit, when faced with an almost identical fact pattern, held that Article 36 does not create individual rights, even where the individual affirmatively requests consular notification. Gandara v. Bennett, 528 F.3d 823 (11th Cir. 2008). There, an Uruguayan man brought suit under § 1983 alleging that he was not informed of his right to contact his consulate, and that the defendants "subsequently denied his specific request that he be allowed to contact his consulate." Id. at 825. The 11th Circuit, following a rubric similar to Mora, discussed how the treaty's text and context, as well as the interpretation offered by the Executive, all led to the conclusion "that the Vienna Convention does not confer enforceable individual rights." Id. at 829.

The Ninth Circuit, although not specifically addressing a fact pattern involving an affirmative request for consular notification, has concluded that Article 36, as a general matter, does not confer an individual right actionable in a damages claim. See Cornejo v. County of San Diego, 504 F.3d 853, 855 (9th Cir. 2007) ("We agree with the district court that Article 36 does not create judicially enforceable rights. . . . [T]he right to protect nationals belongs to States party to the Convention; no private right is unambiguously conferred on individual detainees such that they may pursue it through § 1983.").

The Fifth and Sixth Circuits, albeit in the criminal context, have concluded broadly "that the Vienna Convention does not create a right for a detained foreign national to consult with the diplomatic representatives of his nation that the federal courts can enforce." United States v. Emuegbunam, 268 F.3d 377, 394 (6th Cir. 2001); see United States v. Jimenez-Nava, 243 F.3d 192, 196-98 (5th Cir. 2001) ("The sum of Jimenez–Nava's arguments fails to lead to an ineluctable conclusion that Article 36 creates judicially enforceable rights of consultation

10

between a detained foreign national and his consular office. Thus, the presumption against such rights ought to be conclusive."). Notably, the Sixth Circuit observed that "the Supreme Court has twice held that the Vienna Convention does not provide a signatory nation a private right of action in the federal courts to seek a remedy for a violation of Article 36. If a foreign sovereign to whose benefit the Vienna Convention inures cannot seek a judicial remedy, we cannot fathom how an individual foreign national can do so in the absence of express language in the treaty." Emuegbunam, 268 F.3d at 394 (citing Federal Republic of German v. United States, 526 U.S. 111 (1999); Breard v. Greene, 523 U.S. 371 (1998)).

In opposition, Gordon refers to holdings in the Seventh Circuit and the International Court of Justice ("ICJ") that Article 36 does convey individual rights. See Jogi v. Voges, 480 F.3d 822, 834-35 (7th Cir.2007) (concluding that "Article 36 confers individual rights on detained nationals"); Case Concerning Avena and Other Mexican Nationals (Mex. v. U.S.), 2004 I.C.J. 12 (Mar. 21). These opinions, however, are neither controlling nor persuasive. The Seventh Circuit Jogi opinion concluded that "Article 36 of the Vienna Convention by its terms grants private rights to an identifiable class of persons-aliens," including an individual right to be informed of the prospect of consular notification. Jogi, 480 F.3d at 824, 835. The opinion is therefore directly contrary to Mora, and the Seventh Circuit appears to be currently in a minority of one among the circuit opinions on the subject. Jogi, 480 F.3d at 824.[2] Additionally, the Second Circuit explicitly considered Avena and concluded that the brief views of the ICJ on this question were not persuasive. Mora, 524 F.3d at 205-07.

---

[2] Gordon also cites Standt v. City of New York, 153 F.Supp.2d 417, 427 (S.D.N.Y. 2001), where the court held that "Article 36 of the Vienna Convention was intended to provide a private right of action to individuals detained by foreign officials" and allowed a similar § 1983 claim to survive summary judgment. However, that case pre-dated Mora, and this Court does not believe that its holding can withstand later case law developments.

11

Adhering to the guidance provided in Mora and other circuit opinions results in the conclusion that Article 36's directive that detaining officials shall notify a consular office upon an alien's request cannot, when violated, be vindicated by a private action for damages filed in our courts. Thus, any claims asserted by Gordon which stem from this asserted violation of the VCCR, brought either directly under the treaty or through § 1983, are dismissed.

### B. The Alien Tort Statute

In addition to the VCCR and § 1983 claims, Gordon asserts a cause of action under the Alien Tort Statute, 28 U.S.C. § 1350. The ATS provides that "[t]he district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350. "[T]he ATS is a jurisdictional statute [that] also grants the power to recognize 'private causes of action for certain torts in violation of the law of nations.'" Mora, 524 F.3d at 208 (quoting Sosa v. Alvarez, 542 U.S. 692, 724 (2004)). Because the Court has already concluded that Gordon may not state a claim under the treaty itself, his ATS claim may only proceed if he has met the stringent requirements for recognizing a customary international law tort. As in Mora, where the court found that a detention paired with a violation of 36(b)(1)(third) was not actionable under the ATS, the Court concludes that Gordon has not shown that the defendants' conduct in this case amounted to a tort in violation of the law of nations.

The number of actionable torts under the ATS is very limited. "To provide a cause of action under the ATS, a customary international law tort must meet a high bar for recognizing new causes of action: it must be both specific and well-accepted." Mora, 524 F.3d at 208 (internal quotations omitted). Any such claim must "rest on a norm of international character accepted by the civilized world and defined with a specificity comparable to the features of the

12

18th-century paradigms" of violation of safe conducts, offenses against ambassadors, and piracy. Sosa, 542 U.S. at 725.

Relying upon the standards set forth by the Supreme Court in Sosa, the Mora panel held that the plaintiff had not met this difficult test—in particular, he had not demonstrated that the proposed tort was "well-accepted" in the international community. Mora, 524 F.3d at 208 (noting that plaintiff had pointed to "no sources which evince support for the specific customary international law tort proposed here—detention without being informed of the availability of consular notification and access."). Notably, as referenced above, it appears that virtually none of the States-parties to the VCCR have recognized a tort cause of action premised on consular notification and access rights. Id. at 188 n.5 & 209. Furthermore, the act of not informing a consulate upon request is not "so bad that those [who engage in this conduct] become enemies of the human race." Id. (quoting Sosa, 542 U.S. at 737). Gordon has not pointed to any evidence to rebut these conclusions.

In sum, there does not appear to be any reason to depart from Mora when the potential tort is based upon a failure to contact the consulate upon request, as opposed to failing to inform the detainee of the availability of consular notification and access. In each instance, "it cannot be said that the tort proposed has 'attained the status of a binding customary norm.'" Id. at 209 (quoting Sosa, 542 U.S. at 737). Accordingly, Gordon's claim under the ATS is dismissed.

### C. 42 U.S.C. § 1985(3)

In his opposition papers, Gordon cursorily asserts that the defendants violated his rights under 42 U.S.C. § 1985(3). "The four elements of a § 1985(3) claim are: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in

13

furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States." Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087-88 (2d Cir. 1993); see also Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 790 (2d Cir. 2007).  In addition, the plaintiff must show that the alleged conspiracy was "motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." Thomas v. Roach, 165 F.3d 137, 146 (2d Cir.1999) (internal quotation marks omitted).  Mere conclusory allegations that a conspiracy took place, without any factual basis evidencing a "meeting of the minds," will warrant dismissal of a § 1985 claim.  Webb v. Goord, 340 F.3d 105, 110-11 (2d Cir. 2003).

Here, Gordon makes only unsupported suppositions that a conspiracy among the defendants took place.  These statements are insufficient to survive a motion to dismiss. See Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir.1997) ("[A] complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss."); Sajimi v. City of New York, 2011 WL 135004, at *7 (E.D.N.Y. 2011).  Moreover, Gordon's only evidence of discriminatory animus is the assertion in his brief that he is an alien of minority race.

Accordingly, any § 1985 claim is dismissed.  In addition, to the extent Gordon's papers contain fleeting references to any other theory of discrimination claim, he has offered nothing beyond his own speculation that he was discriminated against on the basis of race or national origin, and any such claim must be dismissed.

### D. The Agency Defendants

Gordon has also brought suit against the individual defendants' overseeing agencies: the NYPD and ICE.  Though these claims must be dismissed for the reasons stated above, the Court

observes that even if Gordon were asserting a viable individual right, these claims would nonetheless be subject to dismissal.

The New York City Police Department and the 84th Precinct are non-suable entities. "Under New York law, departments which are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and cannot sue or be sued." Hall v. City of White Plains, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002); see also New York City Charter, Ch. 17, § 396; Lauro v. Charles, 219 F.3d 202, 205 n.2 (noting that city police department is a non-suable entity); Wilson v. City of New York, 800 F. Supp. 1098, 1101 (E.D.N.Y. 1992).

Even if this claim were properly brought against the City of New York, it could not stand. In order to sustain a claim for relief under § 1983 against a municipal defendant, a plaintiff must show the existence of an officially adopted policy or custom, and a direct causal connection between that policy or custom and the deprivation of a federal right. See Bd. of County Comm'rs v. Brown, 520 U.S. 397, 403-04 (1997). "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which can be attributed to a municipal policymaker." City of Oklahoma v. Turtle, 471 U.S. 808, 823-24 (1985). Said another way, the plaintiff must demonstrate that the municipality was the "moving force" behind the alleged injury. Brown, 520 U.S. at 404.

Here, Gordon's complaint only cursorily hypothesizes that had the NYPD provided more information to Officer Peralta about his obligations under the VCCR, the alleged injury would not have occurred. Moreover, Gordon's allegations are unsupported by anything other than the

15

facts of what occurred in his own particular case. These statements are insufficient to state a claim of municipal liability under Monell.

As to any of Gordon's claims brought against a federal agency,[3] the Court lacks subject matter jurisdiction. "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." F.D.I.C. v. Meyer, 510 U.S. 471, 486 (1994); see Diaz v. United States, 517 F.3d 608, 611 (2d Cir. 2008). Any waiver of sovereign immunity must be explicit. Id. Here, Gordon has not alleged any waiver by ICE, DHS, or any other federal entity for damages claims of the sort he seeks to bring here.

Finally, the Court notes that to the extent Gordon fleetingly indicates that he is bringing a claim against the United States pursuant to the Federal Torts Claims Act, he has not provided any indication that he satisfied the jurisdictional exhaustion requirement for such a claim. See 28 U.S.C. §§ 2401(b), 2675(a); McNeil v. United States, 508 U.S. 106, 113 (1993) ("The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies.").

Accordingly, any claims against the agency defendants are dismissed.

---

[3] Gordon identifies the Department of Homeland Security and U.S. Immigration and Customs Enforcement as one entity: "U.S. Department of Homeland Security Immigration and Customs Enforcement."

**IV.      CONCLUSION**

For the reasons stated, the defendants' motions to dismiss are granted and the complaint is dismissed in full.  The Clerk of Court is directed to enter judgment, terminate any pending motions, and close this case.


SO ORDERED.

Dated: Brooklyn, New York
       March 29, 2012

                                                                                     /s/
                                                      Carol Bagley Amon
                                                      Chief United States District Judge